**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                          :    Chapter 13
In re:                                                    :
                                                          :    Case No. 12-38189 (cgm)
    Koffi and Essi Afko,                  :
                                                          :
                       Debtor(s).    :
                                                          :
-----------------------------------------------------------X

## MEMORANDUM DECISION GRANTING OBJECTION TO CONFIRMATION

**A P P E A R A N C E S :**

Jeffrey L. Sapir
Chapter 13 and 12 Trustee
399 Knollwood Road
Suite 102
White Plains, NY 10603
*Chapter 13 trustee*

Andrea B. Malin
Genova & Malin, Attorneys
The Hampton Center
1136 Route 9
Wappingers Falls, NY 12590-4332
*Attorney for Debtors*

**CECELIA G. MORRIS
CHIEF UNITED STATES BANKRUPTCY JUDGE**

### Introduction

       The chapter 13 trustee objects to confirmation, arguing that the Debtors' plan must step-up plan payments to account for the repayment of a 401(k) loan during the life of the plan. Debtors argue that their chapter 13 plan can contain a "cushion" for unexpected expenses. The Court sustains the trustee's objection and denies confirmation.

**Jurisdiction**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Amended Standing Order of Reference signed by Chief Judge Loretta A. Preska dated January 31, 2012. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(L) (confirmation of plans).

**Background**

Debtors filed this chapter 13 case on December 28, 2013. Vol. Pet. 1, ECF No. 1. Debtors filed a proposed chapter 13 plan that day. Plan 1, ECF No. 7. The plan provides for monthly payments of $170 per month from January 28, 2013 through December 28, 2017. *Id.*

On March 4, 2013, the chapter 13 trustee objected to confirmation of the plan. Obj. 1, ECF No. 11. According to the trustee, he received a letter on March 4, 2013 from Debtors' counsel which stated that Mr. Afko would complete repayment of a 401(k) loan during the life of the plan. *Id.* The trustee states that the monthly payment of $116.60 will end "in about 24 months." *Id.* The basis for the trustee's objection is that the monthly savings following repayment of the loan should be devoted to the plan as disposable income. *Id.*

Debtors oppose the objection, arguing that the chapter 13 plan should provide a "cushion of money" to provide for unexpected expenses arising during the plan. Opp'n 3, ECF No. 35. According to Debtors, whether the cushion is reasonable is determined on a case-by-case basis. *Id.* Debtors cite to *In re Michaud*, 399 B.R. 365, 372 (Bankr. D. N.H. 2008) for the proposition that "it is appropriate to allow debtors to retain some amount of a tax refund in order to provide the debtors with some cushion against unanticipated expenses that arise in the course of everyday life." *Id.* at 3-4.

In supplemental briefing, the trustee argues that the Debtors must step-up plan payments under *Hamilton v. Lanning*, 130 S. Ct. 2464, 2471 (2010) based on changes in the Debtors' income that are "known or virtually certain at the time of confirmation." Mem. Law 3, ECF No. 51. According to the trustee, the repayment of the loan during the life of the plan is a "virtual certainty." *Id.* at 4. The trustee also argues that most cases post-*Lanning* hold that plan payments must step-up upon repayment of 401(k) loans. *Id.*

Debtors argue that the trustee's motion and supplemental memorandum do not address whether chapter 13 debtors are entitled to a cushion for unforeseen expenses. Supp. Opp'n 4, ECF No. 54. Debtors argue that a cushion of $116.60 per month is reasonable in light of the Debtors' circumstances. *Id.* at 7-8.

Debtors also argue that the trustee's position is in conflict with the Court's practice of permitting Debtors to retain $1,500 of their annual tax refunds as a cushion for unexpected expenses. *Id.* at 8. Debtors argue that they are entitled to a $7,500 total cushion ($1,500 per year over the five year plan) from tax refunds under the Court's policies, which they have not taken in the plan. *Id.* Debtors point out that the $4,197.60 cushion they will receive if they do not reallocate the 401(k) loan payment to the plan is less than the potential $7,500 tax refund cushion. *Id.*

## Discussion

The trustee objects to confirmation of Debtor's plan, and the plan as proposed will pay 24% of outstanding unsecured claims. Supp. Opp'n 3, ECF No. 54. As such, § 1325(b)(1)(B) applies, and the Debtors must commit all their "disposable income" to the plan. Section 1325(b)(1)(B) states:

> [i]f the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan –
>
> \*\*\*
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1)(B).

Disposable income is "current monthly income" minus "amounts reasonably necessary to be expended." 11 U.S.C. § 1325(b)(2). "Current monthly income" is, in basic terms, the monthly average of the debtor's income for the six months preceding the petition date. *See* 11 U.S.C. § 101(10A). The method for determining "amounts reasonably necessary to be expended" depends on whether the debtor has an annual income exceeding the median income in their state. 11 U.S.C. § 1325(b)(3). If the debtor is above median, expenses are determined in accordance with the "means test" of § 707(b)(2).[1] *Id.* If the debtor is below median, reasonable expenses are determined by the court on a case-by-case basis. *In re Thiel*, 446 B.R. 434, 440 (Bankr. D. Idaho 2011). Here, the Debtors are above median, claiming a gross annual income of $122,841.84 on their Official Form B22C ("Means Test Form").[2] Vol. Pet. 37, ECF No. 1. The Debtors acknowledge that the applicable annual median income for a family of five in New York is $89,022, putting the Debtors over the median. *Id.* As such, the means test is applicable to this case.

Section 1322(f) states that any amounts required to repay a loan described in § 362(b)(19) do not constitute "disposable income" under § 1325. Section 362(b)(19) encompasses a "plan established under section 401 . . . of the Internal Revenue Code . . . ." Line 55 of the Means Test

---

[1] "Means test" is a phrase used colloquially to describe the mathematical formula laid forth in § 707(b)(2) and implemented in Official Form B22C.

[2] Available at http://www.uscourts.gov/FormsAndFees/Forms/BankruptcyForms.aspx.

Form allows the debtor to claim "qualified retirement deductions," which includes 401(k) loan repayments. *In re Novak*, 379 B.R. 908, 910 n. 1 (Bankr. D. Neb. 2007).

### I. Plan payments must increase once the 401(k) loan is repaid.

In *Hamilton v. Lanning*, the Supreme Court held that the bankruptcy court may account for changes in the debtor's income or expenses that are "known or virtually certain" at the time of confirmation. 130 S. Ct. at 2469. In *Ransom v. Fia Card Services, N.A.*, the debtor attempted to claim a car-ownership deduction for a car that he owned free and clear of any debt or lease payments. 131 S. Ct. 716, 723 (2011). The Court construed § 707(b)(2)(A)(ii)(I), which states:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the [I.R.S.] for the area in which the debtor resides.

The Court found that the key term in the provision is "applicable." *Id.* at 724. Looking to the ordinary dictionary definition of the term, the Court found that "applicable" would mean "appropriate, relevant, suitable or fit." *Id.* "Rather than authorizing all debtors to take deductions in all listed categories, Congress established a filter: A debtor may claim a deduction from a National or Local Standard table . . . if but only if that deduction is appropriate for him." *Id.* A deduction is only appropriate if the debtor will incur costs corresponding to the category in the I.R.S. Local Standard table. *Id.*

Following *Ransom* and *Lanning*, "most courts have held that the plan payments must 'step up' when the debtors' payments on a secured loan cease, because that event is 'known or virtually certain at the time of confirmation.'" *In re Montiho*, 466 B.R. 539, 541 (Bankr. D. ;. Haw. 2012). In *In re McCullers*, 451 B.R. 498, 500-01 (Bankr. N.D. Cal. 2011), the debtor's 401(k) loan was to be repaid thirty-two months into the plan. *Id.* at 500. The court found that

"the income previously used to repay that loan becomes disposable income that must be used to repay creditors." *Id.* at 500-01.

The Sixth Circuit in *In re Seafort*, 669 F.3d 662, 674 (6th Cir. 2012) held that income made available by completion of a 401(k) loan repayment was disposable income that had to be allocated to the plan. Section 541(b)(7) excludes 401(k) withholdings from property of the estate. *Id.* at 673. In that case, the debtors intended to use savings from completed 401(k) loan payments to make voluntary contributions to their 401(k) plan rather than make additional distributions to creditors. *Id.* at 664. The court held that the exclusion in § 541(b)(7) only applied to exclusions of property that would otherwise be property of the estate under § 541(a), meaning that the exclusion only applies to contributions existing as of the petition date. *Seafort*, 669 F.3d at 673. The debtors could not rely on § 541(b)(7) to exclude the new contributions from disposable income. *Id.*

Here, the Debtors do not assert that they will convert the loan payment savings into voluntary 401(k) contributions; rather, they assert they will use it as a cushion for unanticipated living expenses. The estate property issue in *Seafort* is not applicable to this case. *Seafort* does stand for the proposition that the chapter 13 plan must be stepped up when 401(k) loan repayments cease. *Id.* ("[W]e hold that the income made available once Debtors' 401(k) loan repayments are fully repaid is properly committed to the debtors' respective Chapter 13 plans for distribution to the unsecured creditors.").

The Court finds that the Debtors must step-up their chapter 13 plan payments to account for money realized after repayment of the 401(k) loan. Repayment of the 401(k) loan is a known or virtually certain change in circumstances under *Lanning*.

**II. Debtors cannot include a cushion for unexpected expenses in their plan.**

> The *Lanning* Court stated that
>
> > a court taking the forward-looking approach should begin by calculating disposable income, and in most cases, nothing more is required. It is only in unusual cases that a court may go further and take into account other known or virtually certain information about the debtor's future income or expenses.

130 S. Ct. at 2475. If debtors were able to deviate from the means test due to the mere possibility of a change in expenses, variations from the means test would become the ordinary practice. *Thiel*, 446 B.R. at 439 ("[I]f in order to look beyond Form 22C all that was required was a showing that a debtor's actual expenses varied from the standard expenses allowed under the means test, deviation from Form 22C would be the rule, not the exception."). Instead, the court may only consider "known or virtually certain" changes. *Lanning*, 130 S. Ct. at 2475.

In *Ransom*, the debtor argued that "a debtor who owns his car free and clear may need to replace it during the life of the plan" and that allowing a vehicle ownership cost deduction despite non-ownership of a vehicle "accord[ed] best with economic reality." 131 S. Ct. at 730. The Court flatly rejected this argument. "[N]othing in the statute authorizes such a cushion, which all debtors presumably would like in the event some unexpected need arises." *Id.* Rather, Congress gave the debtor the ability under the Code to seek modification of the plan at a later date to account for changed circumstances. *Id.* (citing 11 U.S.C. § 1329(a)(1)).

In this case, the possibility of unanticipated expenses does not give rise to a "known or virtually certain" change in circumstances under *Lanning*. Under *Lanning* and *Ransom*, it is clear that the Code does not provide for such a cushion in the means test calculation, and the proper remedy is modification if expenses change.

The case cited by Debtors, *In re Michaud*, 399 B.R. 365, 372 (Bankr. D. N.H. 2008), found that debtors could retain some portion of future tax refunds as a cushion for unexpected expenses moving forward. The court recognized a case split on that point. *Id.* (citing *In re*

*Raybon,* 364 B.R. 587, 590 (Bankr. D. S.C. 2007)).  Given the difficulties in estimating tax liabilities several years in advance, the court held that "it is appropriate to allow debtors to retain some amount of a tax refund in order to provide the debtors with some cushion against unanticipated expenses that arise in the course of everyday life and to provide some flexibility to debtors as they attempt to create a budget for the duration of a three-to-five year plan." *Id.*

*Michaud* was decided in the context of tax refunds, and its holding was based in part on the fact that the debtor cannot predict exactly the size of a tax refund for any given year.  *See id.* With respect to loan payments, the amount of disposable income that will accrue to the Debtors upon completion of the loan is certain.

*Michaud* also predates *Lanning* and *Ransom*.  *Lanning* made clear that the means test must be followed unless there is a "known or virtually certain change in circumstances."  The extent to which *Michaud* is applicable after *Lanning* and *Ransom* is not before the Court at this time, as the Debtors acknowledge that the plan does not retain a portion of their tax returns.  It is clear is that the Debtors must step-up their plan payments to account for repayment of the 401(k) loan, as the increase in disposable income due to repayment of the loan is known or virtually certain.

Debtors also point to "Court practice."  This Court only addresses means test issues where there is an objection by the trustee or the creditors.  11 U.S.C. § 1325(b)(1).  This Court must follow *Lanning* where there is an objection.

The remaining cases cited by Debtors predate passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, which enacted the means test.  *Lanning*, 130 S. Ct. at 2469.  Those cases not applicable.  *See Montiho*, 466 B.R. at 541 n.1.

## **Conclusion**

For the foregoing reasons, confirmation is denied. The trustee should submit an order consistent with this opinion.


Dated: Poughkeepsie, New York
     November 15, 2013     /s/ Cecelia G. Morris.
                                         CECELIA G. MORRIS
                                         CHIEF UNITED STATES BANKRUPTCY JUDGE